FILED

January 19, 2021

At:

William T. Walsh

Clerk

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.  21-51(FLW) |
| v. | Filed: January 19, 2021 |
| BERLITZ LANGUAGES, INC., | Violation: 18 U.S.C. § 371 |
| Defendant. | |

### DEFERRED PROSECUTION AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and Berlitz Languages, Inc. ("Berlitz" or the "Company"), a wholly-owned subsidiary of Berlitz Corporation, each a corporation organized and existing under the laws of New York, by and through its undersigned representative, pursuant to authority granted by its board of directors, enter into this Deferred Prosecution Agreement ("Agreement"), the terms and conditions of which are as follows:

### Criminal Information and Acceptance of Responsibility

1.      Berlitz acknowledges and agrees that the United States will file a one-count Information in the United States District Court for the District of New Jersey. The Information will charge Berlitz with a single count of knowingly and willfully combining, conspiring, confederating, and agreeing with other persons and Comprehensive Language Center, Inc., another entity engaged in the provision of foreign-language training services, to defraud the United States by impeding, impairing, obstructing, and defeating by dishonest means the lawful government functions of the National Security Agency (NSA), an agency of the United States, namely, the competitive bidding for and operation of certain contracts and delivery orders issued thereunder, from at least as early as March 2017 until at least December 2017, in violation of 18 U.S.C. § 371. In so doing, Berlitz: (a) knowingly and voluntarily waives its right to indictment

on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution; Title 18, U.S.C., Section 3161; and Federal Rule of Criminal Procedure 48(b); and (b) knowingly and voluntarily waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of New Jersey. The United States agrees to defer prosecution of Berlitz pursuant to the terms and conditions described below.

2.      Berlitz admits, accepts, and acknowledges that, under U.S. federal law, it is responsible for the acts of its officers, directors, employees, and agents that give rise to the charges in the Information. Berlitz admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate. Should the United States pursue the prosecution that is deferred by this Agreement, Berlitz agrees that it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing or other hearing. In addition, Berlitz agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form. Neither this

Agreement nor the Information is a final adjudication of the matters addressed in those documents.

## Parties to and Scope of the Agreement

3.      Berlitz is organized under the laws of New York with its principal place of business in Princeton, New Jersey. This agreement binds Berlitz and the United States Department of Justice, Antitrust Division. This Agreement also creates contingent rights and obligations for Berlitz's current officers, directors, and employees as of the date of the signature of this Agreement, who will be collectively referred to as "Covered Individuals." The contingent rights and obligations for Covered Individuals are limited expressly as described below.

## Length of the Agreement

4.      This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending three (3) years from that date (the "Term"), except for the Cooperation Obligations set forth in Paragraphs 6 and 7 below. Berlitz agrees that in the event that the United States determines, in its sole discretion, that Berlitz has violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one year, without prejudice to the United States' right to proceed as provided in Paragraphs 19-22 below. Any extension of the Agreement extends all terms of this Agreement, including attachments, for an equivalent period, but does not extend the due date for payments provided in Paragraphs 9 and 11 below.

## Relevant Considerations

5.      The United States enters into this Agreement based on the individual facts and circumstances of this case. Among the facts considered were the following:

(a)     the nature and seriousness of the illegal conduct, which involved submitting a false and fraudulent bid to the National Security Agency for the provision of foreign-language training services, which impeded the ability of the agency to conduct a competitive bidding process;

(b)     Berlitz has provided timely and thorough cooperation in the United States' investigation into criminal antitrust, fraud, and related criminal violations among foreign-language training service providers;

(c)     Berlitz has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement; and

(d)     this Agreement can ensure that integrity has been restored to Berlitz's operations and preserve its financial viability while preserving the United States' ability to prosecute it should a material breach occur.

**Cooperation and Disclosure Obligations**

6.     Berlitz shall cooperate fully and truthfully with the United States in any and all matters relating to the current federal criminal investigation into violations of federal antitrust, fraud, and related criminal laws involving foreign-language training services, including the conduct described in this Agreement and the attached Statement of Facts, and other conduct under investigation by the United States at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the term specified in Paragraph 4 (collectively "Federal Proceeding"). Federal Proceeding also includes, but is not limited to, any investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit

4

such offenses in any Federal Proceeding. Berlitz agrees that its full, truthful, and continuing cooperation pursuant to this Paragraph will include, but not be limited to, the following:

(a)      producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of Berlitz, that are requested by the United States in its sole discretion in connection with any Federal Proceeding, as well as providing to the United States a log of any responsive documents, information, and other materials that were not provided, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion;

(b)      using its best efforts to secure the full, truthful, and continuing cooperation of the Covered Individuals as may be requested by the United States in its sole discretion. Such efforts will include, but not be limited to, making these persons available in the United States and at other mutually agreed-upon locations at Berlitz's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with the Federal Proceeding; and

(c)      with respect to any information, testimony, documents, records or other tangible evidence provided to the United States pursuant to this Agreement, Berlitz consents to any and all disclosures to other governmental authorities, including federal, state, and local authorities of such materials as the United States in its sole discretion shall deem appropriate.

7.      The full, truthful, and continuing cooperation of Covered Individuals will be subject to the procedures and protections of this Paragraph, and will include, but not be limited to:

(a)      producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, that are requested by the United States in its sole discretion in connection with any Federal Proceeding, as well as providing to the United States a log of any responsive documents, information, and other materials that were not provided, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion;

(b)      being available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of the United States in connection with any Federal Proceeding;

(c)      responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§1001, 1623), obstruction of justice (18 U.S.C. § 1503 *et seq.*), or conspiracy to commit such offenses;

(d)      when called upon to do so by the United States in connection with any Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(e)      when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621),

making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623),

contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. §1503 *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her pursuant to this

Agreement is void, the statute of limitations period for any offense will be tolled for the period

between the date of signature of this Agreement and six months after the date that the United

States gave notice of its intent to void its obligations to that person under this Agreement.

Nothing in this Paragraph 7 creates any obligations by or for any person who is not a Covered

Individual.

8.     In addition to the Cooperation Obligations described above, during the Term of

the Agreement, should Berlitz learn of or possess any evidence or allegations of criminal

violations of United States law by Berlitz, or by any present or former officers, directors,

employees, or agents during their employment at the Company, Berlitz shall promptly report

such evidence or allegations to the United States. Any information that Berlitz thus discloses to

the United States will likely include proprietary, financial, confidential, and competitive business

information. Public disclosure of the information and reports could discourage cooperation,

impede pending or potential government investigations, and thus undermine the United States'

objectives in obtaining such reports. For these reasons, among others, the information and reports

and the contents thereof are intended to remain and shall remain nonpublic, except as otherwise

agreed to by the parties in writing, or except to the extent that the United States determines in its

sole discretion that disclosure would be in furtherance of its discharge of its duties and

responsibilities or is otherwise required by law.

**Penalty and Victim Compensation**

9.     The United States and Berlitz agree that Berlitz will pay a monetary penalty in the

amount of **$147,000.00 (One Hundred and Forty-Seven Thousand Dollars and no Cents)** to

the U.S. Treasury within thirty (30) days of the Effective Date of this Agreement. Berlitz and the United States agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5. The parties further agree that application of the Sentencing Guidelines to determine the applicable fine range yields the following analysis:

a.   The November 1, 2018 version of the U.S.S.G. is applicable to this matter.

b.   <u>Offense Level.</u> Based upon U.S.S.G. § 2C1.1, the total offense level is 12. The base offense level under § 2C1.1(a)(2) is 12, and no Specific Offense Characteristics under (b) or Cross References under (c) apply.

c.   <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(1), the base fine is $70,000.

d.   <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 7, calculated as follows:

| | |
|---|---|
| (a) Base Culpability Score | 5 |
| (b)(2) The organization had 1,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +3 |
| (g)(2) The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| **TOTAL** | 7 |

<u>Calculation of Fine Range:</u>

| | |
|---|---|
| Base Fine | $70,000 |
| Multipliers | 1.4(min)/2.8(max) |

8

Fine Range                                          $98,000/$196,000

10.     The penalty set forth in Paragraph 9 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that such penalty is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that any amount of the penalty paid under this Agreement should be offset against any criminal fine the Court imposes as part of a future judgment. Berlitz acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States in connection with the payment of any part of this penalty.

11.     The United States and Berlitz agree that Berlitz, along with its co-conspirators, is jointly and severally liable for **$56,984.00 (Fifty-Six Thousand Nine Hundred and Eighty-Four Dollars and no Cents)** in victim compensation, and that Berlitz will pay that amount, less any portion of that amount paid by a co-conspirator, to the National Security Agency according to its instructions within thirty (30) days of the Effective Date of this Agreement, and send a confirmation letter to the United States upon payment. Berlitz and the United States agree that this victim compensation amount is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5.

**Conditional Release from Liability**

12.     In return for the full and truthful cooperation of Berlitz as described in Paragraph 6, and compliance with the other terms and conditions of this Agreement:

(a)     The United States agrees that, except as provided by this Agreement, it will not bring criminal charges against Berlitz for any act or offense committed before the

Effective Date in furtherance of an antitrust conspiracy or conspiracy to defraud involving the provision of foreign-language training services in the United States, as described in the Statement of Facts;

(b)    The United States further agrees that, except as provided by this Agreement, it will not bring criminal charges against any Covered Individual for any act or offense committed before the Effective Date in furtherance of an antitrust conspiracy or conspiracy to defraud involving the provision of foreign-language training services in the United States, as described in the Statement of Fact;

(c)    Failure by Berlitz or any Covered Individual to comply fully with the Cooperation Obligations under Paragraphs 6 or 7 will void the United States' agreement in Paragraphs 12(a) and/or (b), and Berlitz or any such Covered Individual may be prosecuted criminally for any federal crime of which the United States has knowledge; and

(d)    The United States' agreement in Paragraphs 12(a) and (b) does not apply to subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy to commit such offenses. Its agreement in Paragraphs 12(a) and (b) also does not apply to civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence.

**Related Administrative Proceedings**

13.    Berlitz understands that it may be subject to exclusion, suspension, or debarment action by state or federal agencies, and that this Agreement in no way controls what action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation and remediation of Berlitz as a matter for that agency to consider

before determining what action, if any, to take. By agreeing to provide this information to such agencies, the United States is not agreeing to advocate on behalf of Berlitz, but rather is agreeing to provide facts to be evaluated independently by such agencies.

### Corporate Compliance Program

14.     In light of the conduct described in the Information and in the Statement of Facts, Berlitz represents that it has implemented compliance controls designed to prevent and detect similar fraud and antitrust violations in the future.

15.     Berlitz represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect criminal antitrust and fraud violations throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors. Berlitz further represents that its compliance and ethics program includes the minimum elements set forth in Attachment C to this Agreement.

16.     Berlitz further represents that it will continue to periodically review its compliance and ethics program and make any necessary adjustments and updates based on changes in Berlitz's operations, circumstances, legal developments, and industry practices.

### Deferred Prosecution

17.     In consideration of the undertakings agreed to herein by Berlitz, the United States agrees that any prosecution of Berlitz for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct disclosed by Berlitz that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

18.     The United States further agrees that if Berlitz fully complies with all obligations under this Agreement, the United States will not continue the criminal prosecution of the offense described in Paragraph 1 of the Agreement and, at the conclusion of the Term, this Agreement

shall expire, except for the Cooperation Obligations set forth in Paragraphs 6 and 7. Within thirty (30) days of the Agreement's expiration, the United States shall seek dismissal with prejudice of the Information described in Paragraph 1 of the Agreement.

### Breach of Agreement

19.     If, during the Term of this Agreement, Berlitz (a) commits any felony offense under U.S. federal law; (b) provides to the United States deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to satisfy any Cooperation Obligations as set forth in Paragraph 6 of this Agreement; (d) fails to satisfy the requirements set forth in Attachment C; or (e) otherwise fails to completely perform or fulfill any of Berlitz's obligations under this Agreement, regardless of whether the United States becomes aware of such a breach after the Term is complete, Berlitz shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for the District of New Jersey or any other appropriate venue. Determination of whether Berlitz has breached this Agreement and whether to pursue prosecution of the Company shall be in the United States' sole discretion. Any such prosecution may be premised on information provided by any source, including but not limited to Berlitz and any Covered Individuals.  Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the United States prior to the date of the signing of this Agreement that is not time-barred by the applicable statute of limitations on the Effective Date of this Agreement may be commenced against Berlitz, notwithstanding the expiration of the statute of limitations between the Effective Date and the expiration of the Term plus one year. Thus, by signing this Agreement, Berlitz agrees that the statute of limitations with

respect to any such prosecution that is not time-barred on the Effective Date of this Agreement shall be tolled for the duration of the Term plus one year. In addition, Berlitz agrees that the statute of limitations as to any felony offense under U.S. law that occurs during the Term will be tolled from the date upon which the offense occurs until the earlier of: (a) the date upon which the United States is made aware of the offense, or (b) the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

20.     In the event that the United States determines that Berlitz has breached this Agreement, the United States agrees to provide Berlitz with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, Berlitz shall have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions Berlitz has taken to address and remediate the situation, which the United States shall consider in determining whether to pursue prosecution of Berlitz.

21.     In the event that the United States determines that Berlitz has breached this Agreement: (a) all statements made by or on behalf of Berlitz to the United States or to the Court, including the Statement of Facts, and any testimony given by any individual before a grand jury, court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against Berlitz; and (b) Berlitz shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal law or rule that testimony or statements made by or on behalf of Berlitz prior or

subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether any conduct or statement of any current or former director, officer, or employee, or any person acting on behalf of, or at the direction of, Berlitz will be imputed to Berlitz for the purpose of determining whether Berlitz has violated any provision of this Agreement shall be in the sole discretion of the United States.

22.     Berlitz acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if Berlitz breaches this Agreement and this matter proceeds to judgment. Berlitz further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

23.     On the date that the period of deferred prosecution specified in this Agreement expires, as set forth in Attachment D, Berlitz, by the President or CEO of the Company and its General Counsel or outside legal counsel, will certify to the United States that Berlitz has met its disclosure obligations set forth in Paragraph 8 of this Agreement. Each certification will be deemed a material statement and representation by Berlitz to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

**Sale, Merger, or Other Change in Corporate Form**

24.     Berlitz agrees that, during the Term, if it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to Berlitz's consolidated operations, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall provide notice to the United States at least thirty (30) business days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  Unless, after receiving the required notice from the Company of the

14

transaction, the United States consents in its sole discretion that a specific transaction will not be subject to this provision, the Company shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. Unless the United States consents as described above, the purchaser or successor in interest must also agree in writing that the United States' ability to enforce all provisions of this Agreement, including to determine that it has been breached, is applicable in full force to that entity. Berlitz agrees that, unless the United States consents as described above, the failure to include these provisions in the transaction will make any such transaction null and void. The United States shall inform Berlitz within fifteen (15) business days of receiving Berlitz's notification if it consents that the transaction(s) will not be subject to this provision, or if it determines that the transaction(s) will have the effect of circumventing or frustrating the purposes of this Agreement.  If the United States does not respond to Berlitz's notification within fifteen (15) business days, the transaction(s) at issue shall be deemed not to be subject to this provision and not to have the effect of circumventing or frustrating the purposes of this Agreement.  If at any time during the Term Berlitz engages in a transaction(s) that has the effect of circumventing or frustrating the purposes of this Agreement, the United States may deem it a breach pursuant to Paragraphs 19-22 of this Agreement. Nothing herein shall restrict Berlitz from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction(s), so long as such indemnification does not have the effect of circumventing or frustrating the purposes of this Agreement, as determined by the United States in its sole discretion.

**Public Statements by the Company**

25.    Berlitz expressly agrees that neither it nor its parent company, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for Berlitz, shall make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by Berlitz set forth above or as described in the Statement of Facts. Any such contradictory statement shall, subject to cure rights of Berlitz described below, constitute a breach of this Agreement, and Berlitz thereafter shall be subject to prosecution as set forth in Paragraphs 19-22 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to Berlitz for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the United States. If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the United States shall so notify Berlitz, and Berlitz may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. Berlitz shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Berlitz in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of Berlitz.

26.    Berlitz agrees that if it, its parent, or any of its direct or indirect subsidiaries or corporate affiliates, issues a press release or holds any press conference in connection with this Agreement, Berlitz shall first consult the United States to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to

matters between the United States and Berlitz; and (b) whether the United States has any objection to the release or proposed statements.

## Limitation on Binding Effect of Agreement

27.     This Agreement is binding on Berlitz and the United States Department of Justice, Antitrust Division, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities.

28.     If the court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed not to have begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

## Notice

29.     Any notice to the United States under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Joseph Muoio, Chief of the New York Office, Department of Justice-Antitrust Division, 26 Federal Plaza, Room 3630, New York, NY 10278. Any notice to Berlitz under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to: Legal Department, Berlitz Languages, Inc., 7 Roszel Road, 3rd Floor, Princeton, NJ 08540 with a copy to Rich Zack, Esq., Troutman Pepper, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA, 19103. Notice shall be effective upon actual receipt by the United States or Berlitz.

**Entirety of Agreement**

30.     This Agreement, including its Attachments A-D, sets forth all the terms of the Agreement between Berlitz and the United States. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorneys for Berlitz, and a duly authorized representative of Berlitz.

Dated: January 15, 2021

Respectfully submitted,

By: _____

Curt Uehlein
Chief Executive Officer

Berlitz Languages, Inc.

By: _____

Richard Zack
Troutman Pepper
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

Counsel for Berlitz

By: _____

Carrie A. Syme, Assistant Chief
Kathryn Kushner, Trial Attorney

U.S. Department of Justice
Antitrust Division, New York Office
26 Federal Plaza, Room 3630
New York, NY 10278
(646) 714-1906

18

## COMPANY OFFICER'S CERTIFICATE

I have read the Deferred Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for Berlitz Languages, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. No one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Chief Executive Officer for Berlitz Languages, Inc., and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: January 15, 2021

Berlitz Languages, Inc.

By: _____

Curt Uehlein
Chief Executive Officer

## CERTIFICATE OF COUNSEL

I am counsel for Berlitz Languages, Inc. (the "Company") in the matter covered by the Deferred Prosecution Agreement ("Agreement"). In connection with such representation, I have examined relevant documents of the Company and discussed the terms of this Agreement with the Board of Directors of the Company. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Chief Executive Officer of the Company. I have fully advised them of the rights of the Company, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: January 15, 2021

By: _____

Richard Zack
Troutman Pepper
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

**Attachment A**

**Statement of Facts**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement ("Agreement") between the United States Department of Justice, Antitrust Division ("United States") and Berlitz Languages, Inc. ("Berlitz" or "the Company"), a wholly-owned subsidiary of Berlitz Corporation. The Company hereby agrees and stipulates that the following information is true and accurate. The Company admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below. Should the United States pursue the prosecution that is deferred by the Agreement, the Company agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any criminal proceeding. The following facts establish beyond a reasonable doubt the charges set forth in the Information.

1.      From at least as early as March 2017 until at least December 2017 (the "Relevant Period"), Berlitz Languages, Inc. ("BERLITZ"), a corporation organized and existing under the laws of New York with its principal place of business in Princeton, New Jersey, was, among other things, a provider of foreign-language training services in the United States. BERLITZ employed and continues to employ approximately 1,400 individuals.

2.      Whenever in this Statement of Facts reference is made to any act, deed, or transaction of BERLITZ, the statement means that BERLITZ engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

3.      Many individuals and employees of companies and government agencies need to be trained in speaking, reading, and understanding languages other than English to perform

21

their job duties. Private companies often are hired to perform foreign-language training services, including by providing a language instructor, designing the course of training, creating training materials, and providing appropriate facilities in which the training takes place. In some cases, foreign-language training companies must compete to win contracts that will allow them to provide training services for a particular customer for a fee.

4.      Certain offices and agencies of the United States government, including the National Security Agency ("NSA"), have regular needs to train their employees and contractors in foreign languages. For many military personnel and civilian workers in the area of cryptology, this is mission-critical work that supports the mission of the NSA to protect the nation from threats and gain an advantage for the United States and its allies in matters of intelligence and security.

5.      During the Relevant Period, BERLITZ and Comprehensive Language Center, Inc. ("CLCI") competed against each other and other entities to win contracts to provide foreign-language training services to the NSA.

6.      In early 2017, the NSA announced a competitive bidding process by which it would award up to three prime contracts to companies to provide training services in specified foreign languages at each of six different geographic locations around the United States, including an area that encompasses the city of Odenton, Maryland. These contracts were collectively known as External Language Training III contracts, hereinafter "ELT-III Contracts." The term of each ELT-III Contract, including extensions, ran from 2017-2022 and, together, authorized up to $3.75 million in funds to be paid to the successful bidders. The NSA stated that the ELT-III Contracts would be awarded to up to three companies whose bids were deemed Technically Acceptable, including by being able to provide training in appropriate

facilities at all six specified geographic locations, and by bidding the lowest prices. On approximately August 1, 2017, BERLITZ, CLCI, and an unrelated third party each were awarded one of the ELT-III Contracts.

7.     Each winner of an ELT-III Contract was thereafter entitled to submit a bid for individual Delivery Orders issued under those contracts; each Delivery Order called for a particular set of training sessions in a particular foreign language at a particular location. The NSA stated that each Delivery Order would be awarded to the company whose bid for the described training was deemed Technically Acceptable and who bid the lowest price. In order to be deemed Technically Acceptable, the company was required to have a facility in the particular location in which it could conduct the training. Through December 21, 2017, the NSA bid and awarded approximately 15 Delivery Orders under the ELT-III Contracts.

8.     During the Relevant Period, in the District of New Jersey and elsewhere, BERLITZ and its co-conspirators did knowingly and willfully combine, conspire, confederate, and agree to defraud the United States by impeding, impairing, obstructing, and defeating by dishonest means the lawful government functions of the NSA, an agency of the United States, namely, the competitive bidding for and operation of the ELT-III Contracts and the Delivery Orders issued thereunder.

9.     The object of the conspiracy was for CLCI to fraudulently obtain an ELT-III Contract and Delivery Orders issued thereunder, by falsely representing CLCI's facilities available to perform under the Contract; to suppress competition between CLCI and BERLITZ for certain Delivery Orders issued under their Contracts; and to obtain payments for certain work performed under their Contracts.

10.    For the purpose of forming and carrying out the charged combination and conspiracy, BERLITZ, CLCI, and their co-conspirators did those things that they combined and conspired to do, including, among other things:

a.    discussing, agreeing to, and facilitating CLCI's submission of false and misleading bid information to the NSA in order to misrepresent its bid as Technically Acceptable, specifically by falsely and misleadingly claiming that CLCI could perform foreign-language training services at a particular facility in Odenton, Maryland ("the Odenton Facility") that in fact belonged to and was operated solely by BERLITZ;

b.    discussing and agreeing that, in exchange for BERLITZ's agreement to allow CLCI to misrepresent the Odenton Facility as available to CLCI for its performance of foreign-language training services, CLCI would not bid against BERLITZ for Delivery Orders involving foreign-language training scheduled to take place in or near Odenton, Maryland;

c.    discussing and agreeing that BERLITZ and CLCI would deceive the NSA regarding the existence and nature of their agreement;

d.    submitting invoices to the NSA for foreign-language training services provided under the ELT-III Contracts and associated Delivery Orders, which, by the means and methods described above, were based on non-competitive bids; and

e.    receiving payments for foreign-language training services provided under the ELT-III Contracts and associated Delivery Orders, which, by the means and methods described above, were based on non-competitive bids.

11.    In furtherance of the conspiracy and to effect the illegal object thereof, BERLITZ, together with its co-conspirators, committed the following overt acts, among others, in the District of New Jersey and elsewhere in the United States:

24

      a.      On or around April 12, 2017, CLCI emailed BERLITZ a draft letter memorializing their agreement, pursuant to which:

          i.      CLCI, in its bid to the NSA for the ELT-III Contract, would falsely represent that it could perform foreign-language training services at the Odenton Facility;

          ii.      CLCI would not disclose to the NSA that the Odenton Facility was in fact owned and operated solely by BERLITZ; and

          iii.      if both BERLITZ and CLCI won ELT-III Contracts, CLCI would not bid against BERLITZ for Delivery Orders issued under the ELT-III Contracts for work in or near Odenton, Maryland;

      b.      On or around April 17, 2017, BERLITZ and CLCI executed the written agreement described in subsection (a) above;

      c.      On or around April 20, 2017, BERLITZ and CLCI each submitted a bid to the NSA for an ELT-III Contract;

      d.      In or around May 2017, after the NSA sent a request to BERLITZ and CLCI for additional information on their Maryland training facilities, BERLITZ emailed CLCI a revised floorplan for the Odenton Facility for CLCI to use in its response to the NSA;

      e.      On or around August 1, 2017, after the NSA had selected both BERLITZ and CLCI as winners of ELT-III Contracts, BERLITZ and CLCI each executed a written ELT-III Contract with the NSA, entitling each to compete for Delivery Orders to be bid and awarded under those contracts;

      f.      On or around August 9, 2017, after the NSA had sent out the first ELT-III Delivery Order for bid, BERLITZ and CLCI exchanged emails to maintain their conspiratorial agreement, including an email by CLCI to confirm that, in accordance with their April 17, 2017

conspiratorial agreement, CLCI would not bid on this Delivery Order because it called for foreign-language training work in Maryland;

g.      Shortly after the email conversations referred to in subsection (f) above, consistent with those communications and the conspiratorial agreement, BERLITZ submitted a bid to the NSA for the first Delivery Order;

h.      On or around August 17, 2017, after the NSA had sent out the second ELT-III Delivery Order for bid, BERLITZ and CLCI exchanged emails to maintain their conspiratorial agreement, including an email by CLCI to confirm that it would not bid on this Delivery Order because it called for foreign-language training work in Maryland;

i.      Shortly after the email conversations referred to in subsection (h) above, consistent with those communications and the conspiratorial agreement, BERLITZ submitted a bid to the NSA for the second Delivery Order;

j.      During the period from in or around August 2017 until on or around December 18, 2017, BERLITZ submitted bids for and was awarded Delivery Orders under the ELT-III Contract for foreign-language training work to be performed in Maryland, worth approximately $111,312.00; and

k.      During the period from in or around August 2017 until on or around December 18, 2017, BERLITZ submitted or caused to be submitted to the NSA invoices for payments for work awarded under the ELT-III Contract performed in Maryland, and received at least one payment from the General Services Administration for such invoiced work.

## Attachment B: Certificate of Corporate Board Resolutions

WHEREAS, Berlitz Languages, Inc. (the "Company") has been engaged in discussions with the United States Department of Justice, Antitrust Division ("United States") regarding issues arising in relation to the conduct described in Attachment A; and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a Deferred Prosecution Agreement with the United States dated January 15, 2021 ("Agreement"); and

WHEREAS, the Company's Chief Executive Officer, Curt Uehlein, together with outside counsel for the Company, have advised the Board of Directors of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such Agreement with the United States;

Therefore, the Board of Directors has RESOLVED that:

1.      The Company (a) acknowledges the filing of the one-count Information charging the Company with violation of 18 U.S.C. § 371; (b) waives indictment on such charges and enters into the Agreement with the United States; (c) agrees that a monetary penalty in the amount of **$147,000.00 (One Hundred and Forty-Seven Thousand Dollars and no Cents)** will be paid to the United States Treasury within thirty (30) days of the Effective Date of the Agreement; and (d) agrees that victim compensation in the amount of **$56,984.00 (Fifty-Six Thousand Nine Hundred and Eighty-Four Dollars and no Cents)** will be paid with respect to the conduct described in Attachment A, less any portion of that amount paid by a co-conspirator, to the National Security Agency according to its instructions within thirty (30) days of the Effective Date of this Agreement, along with a confirmation letter to the United States upon payment;

2.      The Company accepts and will comply with all of the terms and conditions contained in the Agreement and its attachments;

3.      The Chief Executive Officer of the Company, Curt Uehlein, is hereby authorized, empowered and directed, on behalf of the Company, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the Chief Executive Officer of the Company, Curt Uehlein, may approve;

4.      The Chief Executive Officer of the Company, Curt Uehlein, is hereby authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5.      All of the actions of the Chief Executive Officer of the Company, Curt Uehlein, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.


Date: January 15, 2021

By: _____
    Paul H. Weinstein
    Corporate Secretary and General Counsel
    Berlitz Languages, Inc.

**Attachment C**

**Corporate Compliance Program**

1.      As part of the Deferred Prosecution Agreement between Berlitz Languages, Inc. ("the Company"), a wholly-owned subsidiary of Berlitz Corporation, and the United States Department of Justice, Antitrust Division ("United States") dated January 15, 2021 ("Agreement"), and in order to address any deficiencies in the Company's compliance program, including its policies, procedures, and internal controls relating to compliance with federal fraud and antitrust laws and regulations, the Company agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing policies, procedures, and internal controls.

2.      Where necessary and appropriate, the Company agrees to modify its compliance program, including compliance policies and procedures designed to ensure the prevention and detection of fraud and antitrust violations. At a minimum, this should include, but not be limited to, the following elements:

(a)      *Design and Comprehensiveness*. The Company has or will develop compliance policies and procedures reasonably designed to prevent fraud and antitrust violations. The policies and procedures should be integrated into the Company's business practices and reinforced through appropriate internal controls specifically tailored to the Company's business. The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

(b)      *Culture of Compliance.*  The Company's senior leadership as a whole, through words and actions, will work to foster a culture of compliance throughout the organization. Senior leadership across the organization are and will be held accountable for failures in the Company's fraud and antitrust compliance.

29

(c)      *Responsibility for the Compliance Program.*  The Company will assign responsibility to one or more senior leaders in the company with sufficient background and competence in fraud and antitrust law for the implementation and oversight of the compliance program. Those responsible for the Company's compliance program will be provided with sufficient autonomy, authority, and seniority within the Company's governance structure to effectuate the compliance program.

(d)      *Periodic Risk-Based Reviews.*  The Company will conduct periodic fraud and antitrust risk assessments to ensure that its compliance program, including internal controls, is tailored to the Company's individual circumstances. In undertaking such risk assessments, the Company will review its policies and procedures and make any necessary adjustments and updates based on changes in the Company's operations, circumstances, legal developments, and industry practices.

(e)      *Training and Communication.*  The Company will develop a fraud and antitrust compliance training program tailored to the Company's specific fraud and antitrust risks and will periodically update the program to ensure that it reflects the Company's current policies and reporting procedures, and legal, technical, or marketplace developments. The audience, timing, frequency, form, and content of the Company's fraud and antitrust training should be commensurate with the Company's operations and circumstances. The Company should make certain that all relevant employees (regardless of management level or location) understand the training and when and how to report a possible fraud or antitrust violation.  Training may include participation and compliance certifications as appropriate. The Company will also maintain detailed records of training and compliance-related communications.

30

(f)     *Monitoring and Auditing.*   The Company will conduct regular monitoring and auditing of its fraud and antitrust compliance program to ensure that the program is fully implemented and followed. If the Company's monitoring and auditing functions detect potential violations, they will be reported to the Company's governing authority by the individual(s) responsible for the compliance program. The Company will also revise its policies, procedures, and internal controls as appropriate to reflect the results and findings of monitoring and audit activities.

(g)     *Reporting and Guidance.*   The Company will implement an effective and confidential system for communication that employees may use to seek guidance, raise concerns, or report potential fraud or antitrust violations anonymously and confidentially without fear of retaliation. The system will be widely disseminated to all relevant employees and will be designed to respond promptly to all communications. The Company will maintain detailed records of any communications through this system and how those communications were addressed.

(h)     *Incentives and Discipline.*   The importance of fraud and antitrust compliance will be reflected in the Company's employee evaluation, incentive, and compensation structure. The Company will discipline employees, managers, and senior executives as appropriate for fraud and antitrust compliance failures.

(i)     *Remediation.*   The Company shall have procedures in place to address failures in the Company's fraud and antitrust compliance program and to communicate changes in its policies to employees.

**ATTACHMENT D**

**Certification**

To:     United States Department of Justice
        Antitrust Division
        Attention: Joseph Muoio, Chief, New York Office

Re:     Deferred Prosecution Agreement Disclosure Certification

The undersigned certify, pursuant to Paragraph 23 of the Deferred Prosecution Agreement filed on January 19, 2021 in the U.S. District Court for the District of New Jersey ("Agreement"), by and between the United States Department of Justice, Antitrust Division, and Berlitz Languages, Inc. (the "Company"), that the undersigned are aware of the Company's disclosure obligations under Paragraph 8 of the Agreement and that the Company has disclosed to the Antitrust Division any and all evidence or allegations of conduct required pursuant to Paragraph 8 of the Agreement, which includes evidence or allegations that may constitute a violation of federal antitrust, fraud, and related criminal laws ("Disclosable Information"). This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's compliance program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other Company sources and processes. The undersigned further acknowledge and agree that the reporting requirement contained in Paragraph 8 and the representations contained in this certification constitute a significant and important component of the Agreement and the Antitrust Division's determination whether the Company has satisfied its obligations under the Agreement.

The undersigned hereby certify respectively that [he/she] is the [President/Chief Executive Officer] of the Company and that [he/she] is the [General Counsel of /outside legal counsel for]

the Company, and that each has been duly authorized by the Company to sign this

Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the District of New Jersey. This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the District of New Jersey.

By: _____        Dated: _____
　　　[NAME]
　　　[President/Chief Executive Officer]
　　　Berlitz Languages, Inc.


By: _____        Dated: _____
　　　[NAME]
　　　[TITLE]
　　　[COMPANY/FIRM]